JOHN C. SYDENSTRICKER, *et al.,*

PLAINTIFFS

*v.*

UNIPUNCH PRODUCTS, INC., *et al.,*

DEFENDANTS

UNIPUNCH PRODUCTS, INC., ET AL.,

DEFENDANTS *and* THIRD PARTY PLAINTIFFS

*v.*

TERRELL TOOL AND DIE CORP.,

THIRD PARTY DEFENDANT

(No. CC923)

Decided March 9, 1982.

*Jenkins, Fenstermaker, Kreiger, Kayes* and *Farrell and Michael J. Farrell,* for Unipunch, et al., defendants and third party plaintiffs.

*Love, Wise, Robinson* and *Woodroe and John C. Palmer, IV,* for Niagara.

*Jackson, Kelly, Holt* and *O'Farrell, Robert L. Elkins and Michael L. Minsker, Kelly, Holt & O'Farrell,* for Terrell Tool, third party defendant.

MILLER, CHIEF JUSTICE:

We have accepted this certified question from the United States District Court for the Southern District of West Virginia pursuant to the provisions of W. Va. Code, 51-1A-1, *et seq.*[1] We consider in this question[2] whether a

---

[1] We have discussed this statute at some length in *Abrams v. West Virginia Racing Commission,* 164 W. Va. 315, 263 S.E.2d 103 (1980), and in *Morningstar v. Black and Decker Manufacturing Co.,* 162 W. Va. 857, 253 S.E.2d 666, 668-69 (1979).

[2] The full text of the certified question is:

manufacturer, who has been sued by a plaintiff injured while using the manufacturer's product, may bring a third-party action against the injured plaintiff's employer. The manufacturer's third-party complaint alleges the employer by his "deliberate intent" rendered the manufacturer's product dangerous resulting in the plaintiff employee's injuries. The manufacturer seeks compensation from the employer based on a theory of implied indemnity and/or contribution. The employer contends that our workmen's compensation law precludes the third-party action.

The parties have stipulated to the following statement of facts as set out in the Certification Order:

"This is an action for the recovery of damages for personal injuries by a plaintiff employee, who alleges that certain products used by him in the course of his employment were negligently designed, manufactured and distributed. Plaintiffs, husband and wife, have sued four defendants in their several capacities as manufacturer of a punch press or component parts thereof, and a press, and two of the defendants, Unipunch Products, Inc. (hereinafter 'Unipunch'), and Niagara Machine & Tool Works (hereinafter 'Niagara'), have by separate third-party complaints brought an action against a third-party defendant, Terrell Tool and Die Corporation (hereinafter 'Terrell'), which was the employer of the plaintiff, John C. Sydenstricker.

---

"Whether, in any action for the recovery of damages for personal injuries by a plaintiff employee against multiple defendant manufacturers of products used by plaintiff employee in his employment, an employer, within the meaning of the workmen's compensation statutes which is a subscriber thereto or self-insurer in good standing under the workmen's compensation statutes, of plaintiff employee may be held liable as a third-party defendant to such defendant manufacturers as third-party plaintiffs, upon the theory of contribution and/or implied indemnity based upon allegations in the third-party complaint that such employer was guilty of willful, wanton and reckless misconduct or intentional tort toward the plaintiff employee resulting in plaintiff employee's personal injuries?"

"Defendant and third-party plaintiff, Niagara, asserts in each of two counts of its third-party complaint, liability on Terrell's part for contribution and indemnity: in the first, alleging Terrell's 'negligence and carelessness' in failing to provide a safe place to work, in failing to adopt and furnish adequate safety devices, each of which is required by West Virginia Code, Chapter 21, Article 3, Section 2, and 29 U.S.C. Section 651 *et seq.* and regulations thereunder, and in further failing to take certain specified steps to protect its employee; and in the second, alleging that the aforementioned statutory and regulatory breaches together with other failures, constitute a 'willful, wanton and wrongful misconduct[.]' Indemnity appears to be also asserted in each count upon the ground that, as between Niagara and Terrell, the latter was the more active and thus the ultimately culpable tort-feasor.

"Unipunch asserts against Terrell three indemnity claims in the three counts of its third-party complaint: the first is based on an ostensible independent duty owed to Unipunch by Terrell to follow certain written instructions supplied with the punch press in question; the second, on Terrell's alleged 'willful, wanton, reckless and intentional misconduct' with respect to the use of the punch press; and the third, upon the ground that, as between Unipunch and Terrell, the latter was the more active, and thus ultimately culpable tort-feasor. Unipunch alleges that Terrell misused the product by disregarding written recommendations provided by Unipunch at the time of sale. Unipunch also alleges that Terrell utilized the punch beyond its capacity and modified it by adding a component part."

We answer the certified question in the affirmative but because we have been presented only conclusory facts, we do not pass upon the evidentiary sufficiency of the third-party claims. We state in this opinion only an answer to the abstract certified question posed: "[Whether an employer under our Workmen's Compensation Act] may be held liable as a third-party defendant to

such defendant manufacturers as third-party plaintiffs, upon the theory of contribution and/or implied indemnity based upon allegations in the third-party complaint that such employer was guilty of willful, wanton and reckless misconduct or intentional tort toward the plaintiff employee resulting in plaintiff employee's personal injuries?"

## I.
## The Indemnity Theory

There are two basic types of indemnity: express indemnity, based on a written agreement, and implied indemnity, arising out of the relationship between the parties. One of the fundamental distinctions between express indemnity and implied indemnity is that an express indemnity agreement can provide the person having the benefit of the agreement, the indemnitee, indemnification even though the indemnitee is at fault. Such result is allowed because express indemnity agreements are based on contract principles. Courts have traditionally enforced indemnity contract rights so long as they are not unlawful. *Sellers v. Owens-Illinois Glass Company*, 156 W. Va. 87, 191 S.E.2d 166 (1972). *See also Eastern Gas and Fuel Associates v. Midwest-Raleigh, Inc.*, 374 F.2d 451 (4th Cir. 1967), *cert. denied*, 389 U.S. 951, 88 S.Ct. 333 19 L.Ed.2d 360; *Eley v. Brunner-Lay Southern Corporation, Inc.*, 289 Ala. 120, 266 So.2d 276 (1972); *City and Borough of Juneau v. Alaska Electric Light & Power Company*, 622 P.2d 954 (Alaska 1981); *Christy v. Menasha Corporation*, 297 Minn. 334, 211 N.W.2d 773 (1973); *Waggoner v. Oregon Automobile Insurance Co.*, 270 Or. 93, 526 P.2d 578 (1974); *Di Lonardo v. Gilbane Building Company*, 114 R.I. 469, 334 A.2d 422 (1975); *Herchelroth v. Mahar*, 36 Wis.2d 140, 153 N.W.2d 6 (1967). No claim of an express indemnity agreement is made in this case.

On the other hand, the concept of implied indemnity is based on equitable principles arising from the special nature of the relationship between the parties. In Syllabus Point 2 of *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W. Va. 22, 268 S.E.2d 296 (1980), we stated in regard to implied indemnity:

"The general principle of implied indemnity arises from equitable considerations. At the heart of the doctrine is the premise that the person seeking to assert implied indemnity—the indemnitee—has been required to pay damages caused by a third party—the indemnitor. In the typical case, the indemnitee is made liable to the injured party because of some positive duty created by statute or the common law, but the actual cause of the injury was the act of the indemnitor."

We also explained in *Hill* that the person claiming implied indemnity in order to recover had to be without fault in regard to the incident that created the plaintiff's injuries. This is because a cause of action for implied indemnity rests on principles of restitution which permit a recovery against the indemnitor for all damages that the indemnitee has been required to pay to the injured party. We summarized this point in *Hill* as follows:

"The remedy of implied indemnity is an independent cause of action based primarily on principles of restitution:

'A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in discharge of such liability.' *Restatement of Restitution* § 96 (1937)."

165 W. Va. at 27, 268 S.E.2d at 301. (Footnotes omitted)

Other courts have also concluded that a claim of implied indemnity is based upon principles of equity and restitution and, therefore, hold that one must be without fault to obtain implied indemnity. *Stroh Brewery Company v. Grand Truck Western Railroad Company*, 513 F.Supp. 827 (E.D. Mich. S.D. 1981); *Holden v. Placid Oil Company*, 512 F.Supp. 644 (E.D. La. 1981); *Nelson v. Quimby Island Reclamation District Facilities Corporation*, 491 F.Suppp. 1364 (N.D. Cal. 1980); *Chirco Construction Company, Inc. v. Stewart Title & Trust of Tucson*, 129 Ariz. 187, 629 P.2d

1023 (1981); *Houdaille Industries, Inc. v. Edwards*, 374 So.2d 490 (Fla. 1979); *Przybylski v. Perkins*, 95 Ill. App.3d 620, 51 Ill. Dec. 110, 420 N.E.2d 524 (1981); *Peeples v. City of Detroit*, 99 Mich. App. 285, 297 N.W.2d 839 (1980); *Cartel Capital Corporation v. Fireco of New Jersey*, 81 N.J. 548, 410 A.2d 674 (1980).[3]

When analyzed from the perspective of implied indemnity principles, it is clear that a manufacturer can only recover if he is without fault. In a products liability case such as the one involved here, where the third party is the manufacturer, he is not accorded a right of implied indemnity against the employer because, having made a defective product, he is not fault free. Under *Hill*, this is the predicate for a claim of implied indemnity.

For purposes of the certified question, we are asked to assume that both Niagara and Unipunch have manufactured a defective product — a punch press. In view of these assumed facts and under the foregoing law of implied indemnity, we conclude that Niagara and Unipunch have no claim for implied indemnity against the employer Terrell.[4]

## II.
### The Contribution Theory

The doctrine of contribution also has its roots in equitable principles. The right to contribution arises

---

[3] It is true that some courts have stated that indemnity may arise out of an implied contract. 41 Am.Jur.2d *Indemnity* § 19 (1968). Under this approach, the court will search for some special relationship between the parties in order to find an implied contract of indemnity. *E.g., Steinmetz v. Bradbury Co., Inc.*, 618 F.2d 21 (8th Cir. 1980). The difficulty with this approach is that once an implied contract of indemnity is found, the court does not look to see if the indemnitee is also at fault. *Cf. Houdaille Industries, Inc. v. Edwards*, 374 So.2d 490 (Fla. 1979).

[4] In finding no right of implied indemnity by the manufacturers as against the employer, we need not determine whether our statutory prohibition (W. Va. Code, 23-2-6) against suing an employer who is covered by workmen's compensation for damages arising out of an industrial personal injury would bar a valid claim for either express or implied indemnity. The general rule is that it does not. 2 *Larson's Workmen's Compensation* § 76.30 (1981 Desk Ed.).

when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation. *Tenant v. Craig*, 156 W. Va. 632, 195 S.E.2d 727 (1973); *Hardin v. New York Central Railroad Company*, 145 W. Va. 676, 116 S.E.2d 697 (1960); *Brewer v. Appalachian Construction, Inc.*, 135 W. Va. 739, 65 S.E.2d 87 (1951); 18 Am.Jur.2d *Contribution* § 1, *et seq.* (1965). One of the essential differences between indemnity and contribution is that contribution does not permit a full recovery of all damages paid by the party seeking contribution. Recovery can only be obtained for the excess that such party has paid over his own share.

In *Haynes v. City of Nitro*, 161 W. Va. 230, 240 S.E.2d 544 (1977), we extended a right of contribution to a tortfeasor to bring in as a third-party defendant a fellow joint tortfeasor to share by way of contribution on the verdict recovered by the plaintiff. However, it is clear that *Haynes* did not alter the fundamental theory of contribution among joint tortfeasors. Contribution still rests on their primary joint or common liability to the plaintiff. *Bradley v. Appalachian Power Company*, 163 W. Va, 332, 256 S.E.2d 879, 886 (1979); *Haynes v. City of Nitro*, 161 W. Va. 230, 240 S.E.2d 54, 550 (1977).

It is this common or joint liability to the plaintiff on the part of joint tortfeasors that gives rise to a cause of action for contribution. However, where, as here, the right of contribution is initially grounded in common liability in tort, courts have held that a joint tortfeasor employer is immune from a third-party contribution suit because he is initially immune from tort liability to his injured employee by virtue of the workmen's compensation statutory bar of such tort actions. Such a provision is contained in W. Va. Code, 23-2-6.[5] This point is summarized in 2

---

[5] W. Va. Code, 23-2-6, provides in pertinent part:

"Any employer subject to this chapter who shall subscribe and pay into the workmen's compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided, shall not be liable to respond in damages at common law or by statute for the

*Larson's Workmen's Compensation* § 76.20 (1981 Desk Ed.):

> "The great majority of jurisdictions have held that the employer whose concurring negligence contributed to the employee's injury cannot be sued or joined by the third party as a joint tortfeasor, whether under contribution statutes or at common law. The ground is a simple one: the employer is not jointly liable to the employee in tort; therefore he cannot be a joint tortfeasor."
> (Footnotes omitted)

*See also Kamali v. Hawaiian Electric Company, Inc.*, 54 Hawaii 153, 504 P.2d 861 (1972); *Roberts v. American Chain & Cable Co.*, 259 A.2d 43 (Me. 1969); *Farren v. New Jersey Turnpike Authority*, 31 N.J. Super 356, 106 A.2d 752 (1954); *Cacchillo v. H. Leach Machinery Company*, 111 R.I. 593, 305 A.2d 541 (1973); *Seattle First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wash.2d 230, 588 P.2d 1308 (1978).

We have traditionally held that the immunity statute in our Workmen's Compensation Act insulates the employer against liability for damages arising out of injuries or death occasioned by industrial accidents. *Canterbury v. Valley Bell Dairy Company*, 142 W. Va. 154, 95 S.E.2d 73 (1956); *McVey v. Cheasapeake & Potomac Telephone Co.*, 103 W. Va. 519, 138 S.E. 97 (1927).

However, where the Workmen's Compensation Act provides an express exception from immunity against suits by an employee in a tort area, it follows that a suit grounded on this exception would enable a third party to maintain an action in contribution. This is the precise issue presented in this certified question. We have traditionally recognized that W. Va. Code, 23-4-2,[6] permits an

---

injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments and shall have complied fully with all other provisions of this chapter."

[6] The pertinent portion of W. Va. Code, 23-4-2, is:

employee to sue his employer for any injury or death arising from the "deliberate intention" of his employer. *Mandolidis v. Elkins Industries, Inc.*, 161 W. Va. 695, 246 S.E.2d 907 (1978); *Maynard v. Island Creek Coal Co.*, 115 W. Va. 249, 175 S.E. 70 (1934); *Collins v. Dravo Contracting Co.*, 114 W. Va. 229, 171 S.E. 757 (1933).

In this case, had the injured employee elected to sue his employer Terrell for a "deliberate intent" injury under *Mandolidis* and its companion cases, he could also have joined Unipunch and Niagara, the manufacturers of the punch press, on a products liability claim under *Morningstar v. Black and Decker Manufacturing Company*, 162 W. Va. 857, 253 S.E.2d 666 (1979). The employer, Terrell, as well as Niagara and Unipunch, then would be joint tortfeasors. The fact that the various tort claims asserted by the plaintiff involve different theories or causes of action does not prevent the defendants from being joint tortfeasors so long as their actions resulted in common liability to the plaintiff.[7] *Saltzman v. Heineman*, 116 Ill.App.2d 189, 253 N.E.2d 520 (1969); *Shonka v. Campbell*, 260 Iowa 1178, 152 N.W.2d 242 (1967); *Caldwell v. Fox*, 394 Mich. 401, 231 N.W.2d 46 (1975); *Spitzack v. Schumacher*, 308 Minn. 143, 241 N.W.2d 641 (1976); *Neveroski v. Blair*, 141 N.J. Super. 365, 358 A.2d 473 (1976); *Johnson v. Heintz*, 73 Wis.2d 286, 243 N.W.2d 815 (1976).

In the present case the injured employee has not sued his employer, Terrell, for a "deliberate intent" injury

---

"If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter."

[7] The fact that the employer in a *Mandolidis* suit may be liable for punitive damages as to the plaintiff does not preclude another negligent joint tortfeasor from seeking contribution against the intentional joint tortfeasor on the compensatory verdict found against the negligent joint tortfeasor. *Jacobs v. General Accident Fire & Life Assurance Corporation*, 14 Wis.2d 1, 5, 109 N.W.2d 462, 464 (1961).

under *Mandolidis*. This fact alone does not preclude the third parties however from being able to claim a right of contribution against the employer and thereby bring the employer into the case under *Haynes v. City of Nitro, supra*. We hold this because the underlying tort on which the third party seeks contribution is one not barred by our Workmen's Compensation Act.

From an abstract factual standpoint, it is possible to conceive of a situation where under *Morningstar, supra*, the manufacturer of a machine makes it defective such that it has some safety devices but they are inadequate for the safe operation of the machine. This defect is then compounded by the machine owner who removes all of the safety devices and requires his employees to operate the machine—thereby creating a potential "deliberate intent" injury under *Mandolidis*. The employer-owner would be subject to a suit because of the exemption of W. Va. Code, 23-4-2, under *Mandolidis* and its companion cases.[8]

The employer, Terrell, argues that because the plaintiff-employee did not elect to sue it under a "deliberate intent" *Mandolidis* theory this forecloses the third-party suit by the manufacturers. The argument is made that the deliberate intent exception under W. Va. Code, 23-4-2, is open only to injured employees. We do not read the statute so narrowly particularly in light of the language that "[the employee, et al.] shall also have a cause of action against the employer as if this chapter had not been enacted." This statutory language is designed to place the deliberate intent injury outside the protection

---

[8] Whether the manufacturer may escape liability by showing that the alteration by the employer was so substantial as to constitute superseding negligence is a question we are not asked. *E.g., Kessler v. Bowie Machine Works, Inc.*, 501 F.2d 617 (8th Cir. 1974); *Blim v. Newbury Industries, Inc.*, 443 F.2d 1126 (10th Cir. 1971); *Bradford v. Bendix-Westinghouse Automotive Air Brake Company*, 33 Colo. App. 99, 517 P.2d 406 (1973); *General Motors Corporation v. Hopkins*, 535 S.W.2d 880 (Tex. Civ. App. 1976), *aff'd*, 548 S.W.2d 344 ( *Tex.*, 1977); S. Lauwers, *The Defense of Product Alteration*, 31 Fed. Ins. Counsel Quart. 211 (1981).

of the Workmen's Compensation Act. It thereby permits the employer to be exposed to a claim of contribution on this tort theory. Our right of contribution before judgment is derivative in the sense that it may be brought by a joint tortfeasor on any theory of liability that could have been asserted by the injured plaintiff. However, it is clear that the amount of recovery in a third-party action based on contribution is controlled by the amount recovered by the plaintiff in the main action. In *Bradley v. Appalachian Power Company*, W. Va., 256 S.E.2d 879, 886 (1979), we spoke to the underlying policy behind *Haynes*:

> "*Haynes* is designed to moderate the inequity which existed in our law that enabled the plaintiff to cast the entire responsibility for an accident on one of several joint tortfeasors by deciding to sue only him."

Here, it seems to us that by allowing the employer to be joined in the suit the *Haynes* policy is fulfilled. An employer who may have caused a "deliberate intent" injury under *Mandolidis* to his employee should not escape some liability for that injury merely because the injured employee has another theory for recovery of his injuries as against a third party. The policy behind *Haynes* is intended to provide a mechanism whereby all parties who are jointly liable to the injured plaintiff may be brought into the case in order that they may contribute on any verdict that the plaintiff obtains.

We, therefore, conclude that the deliberate intent exception contained in W. Va. Code, 23-4-2, permits a defendant to bring a third-party action in contribution against the employer of the injured plaintiff. Whether an ultimate recovery can be obtained in the third-party action will depend on whether the employer was guilty of a "deliberate intent" injury under *Mandolidis*.

The certified question having been answered, this case is dismissed from the docket.

*Answered and*
*Dismissed.*