905 F.2d 1532
 16 Fed.R.Serv.3d 471, 17 Media L. Rep. 2130
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Harold L. STRAITWELL, Plaintiff,
v.
NATIONAL STEEL CORPORATION, Defendant-Appellant,
v.
THOMSON NEWSPAPERS, INC., Third Party Defendant-Appellee,
and
Weirton Steel Corporation, a Corporation, Third Party Defendant.
 No. 89-2422.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1990.
Decided May 9, 1990.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. William P. Gray, Sr., District Judge. (CA-84-68-W)
 Carl Nicholas Frankovitch, Mark A. Colantino, Volk, Frankovitch, Anetakis, Richt, Robertson & Hellerstedt, Weirton, W.V. (Argued), for appellant. Donald E. Seymour, Richard W. Hosking, James R. Segerdahl, Kirkpatrick & Lockhart, Pittsburgh, Pa., on brief.
 Christine Ann Machel, William E. Watson & Associates, Wellsburg, W.V. (Argued), for appellee; Frank Cuomo, Jr., Wellsburg, W.V., on brief.
 N.D.W.Va.
 869 F.2d 248, APPEAL AFTER REMAND.
 AFFIRMED.
 Before SPROUSE and CHAPMAN, Circuit Judges, and WALTER E. HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 We previously considered an appeal in this case and reversed a judgment based on a jury verdict awarding plaintiff Harold L. Straitwell a damage award after its finding that National Steel Corporation libeled Straitwell. Straitwell v. National Steel Corp., 869 F.2d 248 (4th Cir.1989). We also reversed the trial court's award of attorney's fees to third-party defendant Thomson Newspapers, Inc., and remanded that portion of the judgment for more detailed findings by the district court. Id. The trial court on remand made findings of fact and, concluding that National Steel should have known that there existed no evidence upon which to ground its third-party complaint against Thomson, again imposed sanctions under Rule 11 of the Federal Rules of Civil Procedure, awarding attorney's fees and costs against National in favor of Thomson. National now appeals the imposition of Rule 11 sanctions. We affirm.
 
 
 2
 * National Steel issued a news release on October 14, 1983, about its investigation of improper behavior of unnamed management employees at its Weirton Steel Division in West Virginia. Thomson published the story, based on the news release, on October 15, 1983, but added a headline saying the steel company was investigating "kickbacks," a word not included in National's news release. Ten days later National Steel fired Harold Straitwell. He sued National Steel for defamation, alleging the company had published false accusations about him regarding kickbacks; and for recklessness, gross negligence, and negligence, alleging the company had failed to investigate adequately and thus discover the falsity of accusations of wrongdoing made against him. Although National Steel responded that its press release consisted of true statements, it also filed a third-party complaint against Thomson Newspapers for contribution or indemnity if Straitwell's suit were successful. At a pre-trial conference, and after the judge indicated he was inclined to dismiss Thomson Newspapers, National Steel dismissed its complaint against Thomson Newspapers, purportedly to prevent possible jury confusion and because it believed Straitwell's claims failed as a matter of law. The jury returned a verdict for Straitwell and compensatory damages of $225,000. After trial, the judge granted Thomson Newspapers' motion for attorney's fees of $16,373.79 and costs of $2,279.71 against National Steel under Rule 11.
 
 
 3
 On appeal, this court reversed the judgment for Straitwell on the grounds that National Steel had a qualified privilege under West Virginia law to give out true information "reasonably necessary for the protection of [its] interests" and that the privilege had not been abused. Straitwell, 869 F.2d at 250. We held that the news release was not issued in bad faith, and that it was reasonably necessary for National Steel to publish information about the investigation in order to maintain the confidence of the community in management of the steel company. Id. at 252. However, because the district court had not sufficiently substantiated its finding that Thomson Newspapers should be awarded attorney's fees and costs, we reversed and remanded that portion of the judgment, instructing the court to make findings of fact concerning whether National had complied with Rule 11's requirement of "belief formed after reasonable inquiry [that the third party complaint was] well grounded in fact and is warranted" "in light of West Virginia law" at the time the third-party complaint was filed. Id. at 253.
 
 
 4
 The district court, on remand, found that the published news article was true and accurate:
 
 
 5
 (27) The news article published by Thomson Newspapers, Inc. on October 15, 1983 under the headline "Kickback Scheme Results In Firing" was true and accurate. Counsel for National, in his closing argument at trial in this matter, stated that the investigation undertaken by National Steel Corporation was into kickbacks and two employees were discharged because they took kickbacks. Also, National Steel's in-house counsel testified at trial that the Thomson news article was accurate.
 
 
 6
 (28) No evidence existed that Thomson Newspapers, Inc.'s publication of the news article on October 15, 1983 was reckless or negligent.
 
 The court concluded as a matter of law:
 
 7
 (1) Since the news article including the headline published by Thomson Newspapers, Inc., which was the basis of National Steel Corporation's Third-Party Complaint against Thomson was true and accurate, National's Third-Party Complaint was not well grounded in fact, and was frivolous and violated the requirements of Rule 11 of the Federal Rules of Civil Procedure.
 
 
 8
 (2) Since there was no evidence to support National Steel's Third-Party Complaint that Thomson Newspapers, Inc. was negligent and reckless in publishing the news article of October 15, 1983, the Complaint was not well-grounded in fact and was not warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law.
 
 
 9
 (3) Thomson Newspapers, Inc. and National Steel Corporation did not act in concert or pursuant to a common design in publishing Weirton Steel's news release of October 14, 1983 or Thomson's news article of October 15, 1983, and this was admitted by National in its Brief in Opposition to Thomson's Motion for Summary Judgment. Therefore, as a matter of law, Thomson and National Steel Corporation would not be entitled to contribution from Thomson Newspapers, Inc.
 
 II
 
 10
 Rule 11 sanctions will ordinarily not be disturbed except for abuse of discretion. Stevens v. Lawyers Mut. Liab. Ins. Co., 789 F.2d 1056, 1060 (4th Cir.1986). Counsel's duty to avoid imposing needless legal costs on adversaries, Mars Steel Corp. v. Continental Bank, 880 F.2d 928, 932-33 (7th Cir.1989), requires a reasonable inquiry into matters of fact and law before filing a pleading. Whether a reasonable inquiry was made is to be judged by an objective standard. Fahrenz v. Meadowfarm Partnership, 850 F.2d 207, 210 (4th Cir.1988). To avoid sanctions, National Steel's filing of the third-party complaint had to meet the requirements of Rule 11 that National believed its third-party action was grounded in fact and warranted by the West Virginia law of contribution and indemnity.
 
 
 11
 West Virginia has two principal requirements for an action based on implied indemnity: (1) the indemnitee must be liable for damages caused by a third party, and (2) the person claiming implied indemnity must "be without fault in regard to the incident that created the plaintiff's injuries." Sydenstricker v. Unipunch Products, Inc., 169 W.Va. 440, 288 S.E.2d 511, 515 (1982); Hill v. Joseph T. Ryerson & Son, Inc., 268 S.E.2d 296, 301 (1980). National Steel originally claimed indemnity on the theory that because it did not include the word "kickback" in its news release, it was blameless as to defamation of Straitwell. The news release, at least minimally, was the starting point for Thomson Newspapers' story, however. Everything in the published article was present in the news release National itself issued, and, since National Steel had actually been investigating its employees for participation in kickback schemes, it knew the headline was truthful. National also had from the beginning of Straitwell's suit maintained that the information in the news release was truthful. And the testimony at trial indicated that months before the news release was issued, National's director of public relations had characterized the investigation into employee improprieties as a kickback investigation.
 
 
 12
 We are persuaded that the contribution action against Thomson would have been equally fruitless. Straitwell's defamation complaint against National Steel alleged that the company had falsely accused him of taking kickbacks and had a duty to investigate and discover the falsity of the accusations against him. His suit rested on National's firing him from his job at a time when it had issued the news release about investigations into employees' improprieties. Thomson Newspapers took no part in Straitwell's termination and published truthful matter about National Steel's employee investigations without any reference to Straitwell. In these circumstances, the common duty not to defame asserted by National in its third-party complaint is too attenuated to bear the weight of joint liability.
 
 
 13
 Quite apart from the failure to base its action on a viable substantive theory, National should have been aware of a potential defense which would no doubt have foreclosed its third-party suit. A reasonable inquiry into West Virginia's law of defamation would have alerted an attorney to the qualified privilege of a newspaper to make fair comment on matters of public interest. The elements of a defamation action by a private individual in West Virginia are:
 
 
 14
 (1) defamatory statements; (2) a non-privileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury.
 
 
 15
 Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70, 77 (W.Va.1984). Defenses to defamation, in addition to truth, include absolute and qualified privilege. Id. The narrow category of absolute privilege does not apply to these facts. Id. However, the newspaper would have been able to claim a qualified privilege* on the basis that the kickback story was fair comment on matters of public interest. Id. at 79.
 
 
 16
 We cannot disagree with the district court's finding that, at the time of filing of the third-party complaint, National Steel had no basis for bringing Thompson Newspapers into the action as a third-party defendant.
 
 
 17
 AFFIRMED.
 
 
 
 *
 A plaintiff may defeat qualified privilege by proving actual malice, City of Mullens v. Davidson, 133 W.Va. 557, 57 S.E.2d 1 (1949), or
 by a showing of (1) an intentional publication of false defamatory material; (2) a publication of false defamatory material in reckless disregard for its truth or falsity; (3) a publication of false defamatory material made to persons who have no reason to receive the information; and (4) a publication of false defamatory material with a primary purpose unrelated to the purpose of the privilege.
 Crump, 320 S.E.2d at 78 (citations omitted). There is no evidence of actual malice in this case.