[No. 13647-0-I.   Division One.   May 9, 1985.]

VAUGHN E. EVANS, *Appellant*, v. JACK STEINBERG, ET AL, *Respondents*.

*Robert W. Freedman,* for appellant.

*Keller, Rohrback, Waldo, Hiscock, Butterworth & Fardal, William C. Smart, Lee, Smart, Cook & Martin,* and *David L. Martin,* for respondents.

WILLIAMS, J.—On April 28, 1975, Vaughn Evans filed a complaint against Jack Steinberg, among others, alleging legal malpractice. He amended the complaint on March 13, 1980, to include Continental Casualty Insurance Company, alleging that Continental breached its contractual duty to defend Evans in a separate legal malpractice action brought against him by an individual represented by Steinberg. Continental was Evans' professional liability insurer. Both Continental and Steinberg brought motions for summary judgment of dismissal which were granted on May 14, 1982. Evans appeals.

The facts are these: In the early 1970's Vaughn Evans, an attorney, represented Amalie and Maksis Sneiders in civil and criminal actions in federal court arising out of their mail order stamp business. The Sneiders had incriminating records relevant to both cases and, with their permission, Evans turned these records over to the postal authorities in connection with the criminal proceedings. The Sneiders were then indicted for mail fraud, but the charges were later dismissed without prejudice.

John Henry, the adverse party in the civil action, sought access to those documents, but on the advice of Evans the Sneiders refused to produce the documents, claiming a constitutional privilege under the Fifth Amendment. As a result, the United States District Court entered a default judgment against the Sneiders for $235,338.89. The Snei-

ders appealed to the United States Court of Appeals for the Ninth Circuit.

In April 1973, after Mr. Sneiders' death, Mrs. Sneiders attempted to replace Evans with Jack Steinberg as her attorney, but Evans refused to cooperate because he had not been paid. Mrs. Sneiders also directed Steinberg to bring a legal malpractice action against Evans based on his handling of the civil case. Continental, Evans' professional liability insurer, retained the law firm of Lane, Powell, Moss and Miller to defend him in the malpractice action. Those attorneys were later replaced by Lycette, Diamond and Sylvester at Evans' insistence. After Evans first refused to agree to settle the action in 1975, Continental extinguished Mrs. Sneiders' claim by purchasing her cause of action for an amount equal to the policy limits. Evans specifically approved this procedure.

In the meantime, Steinberg wanted to participate in the appellate oral argument of the default judgment of $235,338.89 before the Ninth Circuit. The thrust of Steinberg's proposed argument was that Mrs. Sneiders should not be penalized via a default judgment because of the mistaken advice of Evans, her trial attorney. Evans initially objected but later agreed to relinquish one–third of his oral argument time to Steinberg who argued as anticipated. On January 11, 1974, the Ninth Circuit affirmed the default judgment, rejecting all of Evans' arguments and ignoring those made by Steinberg.

Following the Ninth Circuit's decision, Evans in April 1975, commenced this legal malpractice action against Steinberg alleging that Steinberg's argument before the Ninth Circuit had caused the failure in that appeal. Evans amended the complaint to include Continental on March 13, 1980, alleging that it was negligent in supplying incompetent defense counsel in the malpractice action brought by the Sneiders.

The first issue is whether the trial court erred in granting Steinberg's motion for summary judgment of dismissal. Evans' theory in suing Steinberg for legal malpractice was

that a fiduciary relationship existed between the two when they acted as cocounsel on the Sneiders appeal, and that Steinberg breached his duty to exercise reasonable care, skill and diligence by willfully sabotaging Evans' argument.

The necessary elements for a legal malpractice cause of action are (1) an attorney–client relationship, (2) a duty on the attorney's part, (3) breach of the duty, and (4) damage to the client proximately resulting from the breach. *Sherry v. Diercks*, 29 Wn. App. 433, 628 P.2d 1336, *review denied*, 96 Wn.2d 1003 (1981). Summary judgment of dismissal was proper because there was not an attorney–client relationship between Evans and Steinberg. Evans argues that he was an intended beneficiary of Steinberg's incompetent legal work, but provides no authority recognizing a cause of action in favor of a cocounsel for negligence arising from representation of a mutual client; and we know of none.

Evans' argument that Steinberg's actions support causes of action for the torts of outrage and intentional interference with a contractual relationship will not be considered because it was raised for the first time on appeal. *Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982); RAP 2.5(a).

The second issue is whether the trial court erred in granting Continental's motion for summary judgment of dismissal. Most of Evans' claims against Continental are based on the conduct of defense counsel. Even if the defense counsel provided inadequate representation, Continental would not be vicariously liable. As the principal, Continental is not liable for the acts of the defense attorneys who were acting as independent contractors. 7C J. Appleman, *Insurance* § 4687 (1979); *see Larson v. American Bridge Co.*, 40 Wash. 224, 82 P. 294 (1905). Additionally, Evans is prevented from successfully claiming against Continental for damages arising from the purchase of the Sneiders malpractice lawsuit because he agreed to it. Finally, no facts were alleged supporting Evans' claim that Continental was negligent in selecting defense counsel.

Evans' other assignments of error relating to various discovery orders are insubstantial.

Affirmed.

CORBETT, C.J., and WEBSTER, J., concur.

Reconsideration denied September 9, 1985.

Review denied by Supreme Court November 22, 1985.